UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT PIKEVILLE

CIVIL ACTION NO. 7:16-cv-00154-ART

AMY JO HICKS,                                                                    PLAINTIFF

VS.        **ACTING COMMISSIONER'S OPPOSITION TO PLAINTIFF'S
            MOTION FOR PRELIMINARY INJUNCTION**

CAROLYN W. COLVIN, Acting Commissioner                          DEFENDANT
    of Social Security.

*******

The Acting Commissioner (Commissioner) opposes Plaintiff's motion for a preliminary

injunction under Federal Rule of Civil Procedure 65(a).

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

### INTRODUCTION

This lawsuit arises out of an investigation conducted by the Social Security

Administration (SSA)'s Office of Inspector General (OIG) into a complex disability fraud

scheme that resulted in the federal indictment of prominent attorney Eric C. Conn and former

SSA Administrative Law Judge (ALJ) David Daugherty, as well as a medical source. *See*

Indictment, *United States v. Conn*, No. 5:16-cr-22 (E.D. Ky. Filed Apr. 1, 2016). The indictment

alleges that Daugherty assigned Conn's cases to himself; that Daugherty solicited falsified

medical evidence from Conn so that he could issue favorable on-the-record decisions without

hearings; that Conn provided pre-completed template residual functional capacity reports to

doctors who signed them without amendment; that Conn received fees from the SSA; and that

Conn withdrew cash from his business account to make payments to Daugherty. *Id*. at 9-19.

The indictment alleged that the conspirators "intended that the SSA disburse retroactive and

proactive disability benefits, [in] an amount to exceed $600,000,000 . . . irrespective of the Claimants' actual entitlement to benefits." *Id*. at 16.

In 1994, Congress enacted sections 1129(l) and 1631(e)(7) of the Act, 42 U.S.C. §§ 1320a-8(l), 1383(e)(7), as part of a program integrity effort to address precisely these types of fraud schemes. Pub. L. No. 103-296, § 206(d), the Social Security Independence and Program Improvements Act of 1994, 108 Stat. 1464, 1514. Read together, these provisions require that, as soon as SSA's Inspector General has reason to believe that fraud was involved in an individual's application for disability benefits, it must make that information available to the agency and the agency must "immediately redetermine" the individual's eligibility for benefits and "disregard any evidence if there is reason to believe that fraud or similar fault was involved in the providing of such evidence." *Id.* If, after conducting the redetermination, the agency determines that there is insufficient evidence to support the individual's eligibility for benefits, the agency "may terminate such eligibility and may treat benefits paid on the basis of such insufficient evidence as overpayments." 42 U.S.C. § 1383(c)(3).

Consistent with those statutory requirements, following an SSA OIG referral in May 2015 reporting that there was a reason to believe that fraud was involved in Plaintiff's application, SSA informed Plaintiff that it was redetermining the previous decision granting her disability benefits. She received an opportunity for a hearing before an ALJ and an opportunity to testify and submit evidence that was new, material, and related to the period at issue. If she had requested it, the agency would have assisted in obtaining records in support of her original allowance during the redetermination. She continued to receive benefits during the redetermination process.

2

As a result of that redetermination, the agency found that there was insufficient evidence supporting Plaintiff's eligibility for benefits at the time she was originally awarded benefits. It is in the process of terminating her benefits and assessing an overpayment. Plaintiff seeks to enjoin SSA from proceeding "until the legality of Social Security's procedures can receive a merits decision" (ECF No. 7-1 (Pl.'s Mem.) at 2). SSA's actions are fully consistent with the relevant statutory section, section 1631(e)(7) of the Act, 42 U.S.C. § 1383(e)(7), the Administrative Procedure Act (APA), and the Constitution, and therefore, Plaintiff cannot meet the strict requirements justifying the "extraordinary and drastic remedy" of injunctive relief. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curium) (citation omitted). In a recent ruling in a related case, the court denied a similar motion to enjoin redeterminations in these cases because the plaintiffs had not clearly shown their likelihood of success on the merits. *Robertson v. Colvin*, No. 3:16-cv-02113, 2016 WL 3406134, at *5 (S.D. W. Va. June 17, 2016). Likewise, Plaintiff's motion should be denied.

## BACKGROUND

As Plaintiff has averred, she was found disabled by ALJ Daugherty in a decision dated December July 2, 2008 (Pl.'s Mem. at 2). The ALJ issued a fully favorable decision without a hearing based on record evidence that included evidence from Dr. Bradley Adkins (*id.*). At the time, Plaintiff was represented by Conn (*id.*). As discussed below, Dr. Adkins is one of the four doctors implicated in the Conn fraud scheme.

Plaintiff's lawsuit arises out of the redetermination process set forth in section 1631(e)(7) of the Act. 42 U.S.C. § 1383(e)(7). This section requires SSA to "immediately redetermine" an individual's eligibility for benefits whenever there is "reason to believe that fraud or similar fault was involved in the application of the individual for such benefits" and, in the process, to "disregard any evidence" if there is reason to believe that fraud or similar fault was involved in

3

providing that evidence.  42 U.S.C. § 1383(e)(7)(A).  "If, after redetermining the eligibility of an individual for benefits under this subchapter, the Commissioner of Social Security determines that there is insufficient evidence to support such eligibility, the Commissioner of Social Security may terminate such eligibility and may treat benefits paid on the basis of such insufficient evidence as overpayments."  42 U.S.C. § 1383(e)(7)(C).

Under the redetermination process, if the Appeals Council (AC) remands a case to an ALJ for a hearing and a new decision, individuals may submit statements or evidence up to the date of their hearing in support of the original benefits determination, regardless of whether the individual previously submitted that evidence to the AC.  Social Security Ruling (SSR) 16-1p, 81 Fed. Reg. 13436 (Mar. 14, 2016).  If the ALJ issues a decision finding that an individual was not entitled to benefits at the time he or she was originally awarded benefits, that individual's benefits will then be terminated.  The individual may subsequently request review by the AC. *See* 20 C.F.R. §§ 416.1467-416.68.  If the AC issues a decision, that decision will constitute the final agency decision.  20 C.F.R. § 416.1481.  If the AC decides not to review the ALJ's decision, the ALJ's decision will constitute the final agency decision.  *Id.*  In either situation, a dissatisfied individual may then seek judicial review.  42 U.S.C. §§ 405(g)-(h).[1]

On May 12, 2015, pursuant to section 1129(l) of the Act, 42 U.S.C. § 1320a-8(l), the SSA OIG informed the agency that there was reason to believe that fraud was involved in the applications for benefits of approximately 1,800 individuals (*see* ECF No. 10-1, Declaration of Dreega Mosby (Mosby Decl.) ¶ 3, Attachment 2).  Specifically, the SSA OIG had reason to

---

[1] Although § 405(g)-(h) apply only to judicial review of title II benefits determinations, the statute governing judicial review of title XVI cases, 42 U.S.C. § 1383(c)(3), expressly adopts § 405(g)'s standards.  *See* 42 U.S.C. § 1383(c)(3).  For ease of discussion, this brief will refer exclusively to § 405(g), on the understanding that the same analysis applies to § 1383(c)(3).

believe that Mr. Conn or his firm submitted pre-completed "template" residual functional capacity forms purportedly from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., Frederic Huffnagle, M.D., or David P. Herr, D.O., dated between January 2007 and May 2011, in support of the individuals' applications for benefits (*id.*).  A copy of this referral is made available in the claim files of individuals subject to a redetermination.  Hearings, Appeals, and Litigation Law Manual (HALLEX) I-1-3-25 (updated Feb. 25, 2016), available at https://www.ssa.gov/OP_ Home/hallex/I-01/I-1-3-25.html ("If OIG has identified the individual pursuant to section 1129(l) of the Act, SSA will provide a summary of the OIG investigative findings, as well as a copy of the OIG 1129(l) referral, with the notice or in the claim(s) file.").

Section 1631(e)(7) of the Act requires SSA to redetermine those individuals' eligibility for benefits following receipt of this information. 42 U.S.C. § 1383(e)(7).  Plaintiff was one of those individuals.  Shortly after the SSA OIG's referral, on May 18, 2015, SSA notified Plaintiff that there was reason to believe that fraud or similar fault was involved in her application for benefits, and that SSA was required to redetermine her eligibility for benefits under section 1631(e)(7) of the Act, and disregarding the evidence from Dr. Adkins (Mosby Decl. ¶ 4, Attachment 3).  SSA invited Plaintiff to submit more evidence or a statement about the facts or law in her case (*id.*).  On July 1, 2015, SSA notified Plaintiff that it had considered any evidence submitted along with the other evidence of record, but that there was insufficient evidence to support the prior ALJ's decision (Mosby Decl. ¶ 5, Attachment 4).  SSA remanded Plaintiff's case to a new ALJ for a hearing and a new decision (*id.*).

The ALJ conducted a hearing on February 1, 2016, at which Plaintiff appeared with a representative (Mosby Decl. ¶ 7).  After considering the hearing testimony and relevant evidence, the ALJ concluded that there was insufficient evidence in the administrative record to

support Plaintiff's original eligibility for benefits (Mosby Decl. ¶ 7, Attachment 5).  This

decision became the agency's final decision when the AC denied Plaintiff's request for review

on June 15, 2016 (Mosby Decl. ¶ 7, Attachment 6).

Plaintiff filed her complaint with this Court on July 25, 2016 (ECF No. 1), and served the

Acting Commissioner on August 3, 2016.  Under Federal Rule of Civil Procedure 12(b)(6),

Defendant moved to dismiss Plaintiff's complaint in part on August 31, 2016 (ECF No. 10

(Def.'s Mot.)).

## STANDARD OF REVIEW

A "preliminary injunction is an extraordinary and drastic remedy, one that should not be

granted unless the movant, ***by a clear showing***, carries the burden of persuasion."  *Mazurek*,

520 U.S. at 972 (citation and quotation marks omitted) (emphasis in original).  The proof

required for a preliminary injunction is much more stringent than the proof required to survive a

summary judgment motion because a preliminary injunction "is an extraordinary remedy

involving the exercise of a very far-reaching power, which is to be applied only in the limited

circumstances which clearly demand it."  *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)

(citation and quotation marks omitted).

## ARGUMENT

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on

the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v.*

*Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *accord Platt v. Bd. of Comm'rs*, 769 F.3d

447, 453 (6th Cir. 2014).[2]  For the reasons explained below, as well as in Defendant's motion to

dismiss (*see generally* Def.'s Mot.), Plaintiff cannot meet any of these requirements here, much

less all four.  Accordingly, Plaintiff's motion for preliminary injunction must be denied.

**I.      Plaintiff Is Unlikely to Succeed on the Merits of Her Claims**

Plaintiff asserts several reasons supporting the likelihood of her success on the merits.

These arguments, in summary, contend that the redetermination process outlined in section

1631(e)(7) of the Act, 42 U.S.C. § 1383(e)(7), violates the United States Constitution, the APA,

and the Social Security Act.[3]  However, as addressed in Defendant's motion to dismiss, these

claims are without merit, and therefore, Plaintiff has failed to satisfy the burden required for this

Court to grant injunctive relief (*see* Def.'s Mot.).

> **A.      The Redeterminations Do Not Violate the Due Process Clause of the Fifth**
>          **Amendment, the APA, or the Social Security Act**

Plaintiff's contention that her redetermination violated the Due Process Clause, the APA,

and the Social Security Act is without merit.  Plaintiff asserts "[t]he federal government cannot

constitutionally deprive a person of the benefits that their family depends on based on a secret

document containing allegations of fraud" (Pl.'s Mem. at 5), and argues that the agency's actions

---

[2] By its plain language, *Winter* requires a plaintiff to satisfy all four factors to obtain injunctive relief.  *See* 555 U.S. at 20.  Prior to *Winter*, the Sixth Circuit generally held that each of these factors should "be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction," *Leary*, 228 F.3d at 736, and some more recent Sixth Circuit decisions appear to still follow that approach, *see Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 690 (6th Cir. 2014); *but see Mason & Dixon Lines Inc. v. Steudle*, 683 F.3d 289, 296-97 (6th Cir. 2012) (concluding that district court correctly denied motion for preliminary injunction while noting only that the underlying claim lacked merit).  Although SSA does not believe that this balancing approach is consistent with *Winter*, the motion must be denied under either articulation of the test.

[3] Other cases with similar challenges have been filed in this and other district courts, and the Commissioner's similar motion to dismiss has been granted in each case decided thus far.  *See Burchett v. SSA*, 7:16-cv-00062-HRW (E.D. Ky. July 6, 2016), ECF No. 13; *Hitchcock v. SSA*, 7:16 cv 00094-HRW (E.D. Ky. July 26, 2016), ECF No. 9.

also violate the APA and 42 U.S.C. §§ 405(b)(1) and 405(b)(2) (Pl.'s Mem. at 6-11).  Plaintiff

plainly mischaracterizes the redetermination process under section 1631(e)(7) of the Act.  SSA

has not found that Plaintiff has engaged in fraud nor has it terminated Plaintiff's benefits based

on an alleged "secret report."  By law, the agency *cannot* terminate an individual's benefits

based on suspected fraud alone.  *See* 42 U.S.C. § 1383(e)(7)(C); *see also* SSR 16-1p, 81 Fed.

Reg. 13436 (Mar. 14, 2016).

Instead, the agency must follow a procedure set out in statute which directs the agency to

"immediately redetermine" the individual's eligibility for benefits and "disregard any evidence if

there is *reason to believe* that fraud or similar fault was involved in the providing of such

evidence."  42 U.S.C. § 1383(e)(7)(A) (emphasis added)[4]; *see also Martin v. Colvin*, No.

15-46-ART, 2015 WL 7202484, at *4 (E.D. Ky. Nov. 16, 2015), reconsideration denied, No.

CV 15-46-ART, 2016 WL 1305891 (E.D. Ky. Apr. 1, 2016), pending appeal, No. 16-5527 (6th

---

[4] The legislative history shows that Congress was frustrated with the agency's inability to act immediately based on "suspected" fraud uncovered during a criminal investigation.  In introducing H.R. 4277, Representative Santorum summarized the fraud scheme that prompted the bill as well as the purpose of the new legislation.

> [W]hat we found in this case was, even though this fraud was perpetrated, and 14 people were indicted by California in this fraud case, there were 2,000 people who started to receive benefits in 1993 . . . and yet, the Social Security Administration failed to do one redetermination . . . of any one of these 2,000 people who were involved in this fraud case.

> We subsequently, through the work of the subcommittee, convinced Social Security that redeterminations should be done when people who are put on SSI are suspected to [sic] being on there fraudulently.  You would think that that would be an obvious case, but it, in fact, took the work of the subcommittee to get them to do it.

> Now we are going to put in statute that anytime you have *a suspicious [sic] of fraud* of someone who gets on the SSI rolls that we will have an immediate redetermination by the Social Security Administration.

140 Cong. Rec. H4750-03, H571, 1994 WL 274789 (emphasis added).

8

Cir. filed Apr. 20, 2016) (holding that in redetermining plaintiffs' entitlement and disregarding "allegedly fraudulent medical evidence," "SSA obeyed its statutory commands"). The agency may only terminate benefits if, *after* disregarding this evidence, SSA determines that there is insufficient evidence supporting such eligibility. 42 U.S.C. § 1383(e)(7)(C). Before it made this determination, the agency offered the individuals affected in this case, including Plaintiff, the opportunity for a hearing before a neutral decision maker and to submit additional evidence supporting their eligibility for benefits (Mosby Decl. ¶¶ 5, 6). *See* SSR 16-1p, 81 Fed. Reg. 13436 (Mar. 14, 2016) ("During the redetermination, we will consider evidence that was provided absent fraud or similar fault, and that relates to the individual's entitlement and eligibility from the time of the individual's original allowance, even if that evidence was not presented previously."). The agency will even assist in obtaining evidence if Plaintiff requests assistance. *See* HALLEX I-1-3-25 (updated Feb. 25, 2016) (SSA will develop evidence when "[a] beneficiary requests assistance in developing records that he or she indicates are new, material, and related to the period at issue, and the record does not show that SSA previously made every reasonable effort to develop the same evidence").

Further, even before Plaintiff's benefits are terminated, she is entitled to file a new application. *See* SSR 16-1p, 81 Fed. Reg. 13436 (Mar. 14, 2016). If her benefits are terminated, and SSA assesses an overpayment, she may also seek a waiver of that overpayment. *See* 42 U.S.C. § 1383(b)(1)(B) ("The Commissioner of Social Security . . . shall make such provision as the Commissioner finds appropriate in the case of payment of more than the correct amount of benefits with respect to an individual with a view to avoiding penalizing such individual or his eligible spouse who was without fault in connection with the overpayment, if adjustment or recovery on account of such overpayment in such case would defeat the purposes of this

9

subchapter, or be against equity and good conscience.").  These ample procedural protections
mitigate against the risk of erroneous deprivation of benefits which is at the heart of Plaintiff's
process-based challenges.

      In addition, it is clear from the statutory scheme that the SSA OIG's "reason to believe"
that fraud was involved in the application process—and not only the Commissioner's "reason to
believe"—triggers the agency's obligation to take action based on that information.  Under
section 1129(l) of the Act, 42 U.S.C. § 1320a-8(1), which was enacted along with section
1631(e)(7), Congress directed the SSA OIG to notify the agency once it had reason to believe
that fraud was involved in the application of an individual for monthly insurance benefits under
title II or for benefits under title VIII or XVI.[5]  As the legislative history of section 1129(l)
indicates "[f]ollowing the initial receipt, or discovery during the course of a criminal
investigation, of information that an individual or individuals may have fraudulently obtained
SSI benefits, the SSA OIG would undertake such steps as necessary to determine the validity,
veracity and viability of such information" and must disclose that information to the agency at
the point in time that "the OIG has reason to believe that an individual or individuals have
fraudulently obtained SSI benefits."  H.R. Rep. No. 103-506, at 85 (1994), *reprinted in*
U.S.C.C.A.N. 1494; *see also* H.R. Conf. Rep. No. 103-670, at 147 (1994), *reprinted in*

---

[5] Under the Inspector General Act of 1978, OIG is directly responsible for preventing and
detecting fraud and abuse in SSA's programs and operations.  *See* 5 U.S.C. App. § 2(2).  To
accomplish this mission, OIG directs, conducts, and supervises a comprehensive program of
audits, evaluations, and investigations relating to SSA's programs and operations.  OIG also
searches for and reports systemic weaknesses in SSA programs and operations, and makes
recommendations for needed improvements and corrective actions.  *See* Office of the Inspector
General's Strategic Plan for Fiscal Years 2016 through 2020, at 3-4 (revised Aug. 2015),
available at https://oig.ssa.gov/strategic-plans (last visited Aug. 30, 2016).  Given OIG's mission,
SSA is heavily reliant on its activities, particularly its investigative and hotline operations, to
prevent, detect, investigate, and deter fraud against the agency.

U.S.C.C.A.N. 1553 (the bill passed by Congress follows the House bill on this provision, but expands the scope of the provision to include claims under both title II and title XVI of the Act).

Reading these statutory provisions together and in context, where, as here, the SSA OIG provides information that it has a "reason to believe" there was fraud in the application for benefits to the agency, the agency is then required to "immediately" redetermine the eligibility of that individual or group of individuals.  Further, once the SSA OIG communicates its referral to the agency, the agency is required to disregard evidence tainted by fraud in processing a mandatory redetermination.  *Cf. FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) (in construing statutes, it is well established that "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme. . . . A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme, . . . and fit, if possible, all parts into an harmonious whole"); *Maracich v. Spears*, 133 S. Ct. 2191, 2203 (2013) (in construing a statute, a court "must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy").

Consequently, sections 205(b)(1) and 205(b)(2) of the Act do not apply here because initiating redeterminations in these cases was not a decision made by the Commissioner.  As explained above, the decision that there is a "reason to believe" that fraud may be involved is made by the SSA OIG under the authority granted in section 1129(l) of the Act.  Moreover, the process that the agency is providing Plaintiff comports with procedural protections provided under the sections Plaintiff cites, and to the extent that there are differences, those differences are due to the nature and purpose of the redetermination statute.  For example, a redetermination considers whether an individual was disabled at the time of the application, and thus, SSA only considers whether there is evidence to support the original entitlement to benefits, whereas in a

reopening SSA looks to see if the individual is currently disabled.  *See, e.g.*, 42 U.S.C. § 405(b)(2); 20 C.F.R. § 416.1414(b).  Here, SSA has acted consistently with the statutory scheme designed to protect the integrity of the entitlement program while providing Plaintiff with procedural protections that amply comport with any due process requirements.  *See Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (requiring that welfare recipients receive the opportunity for a pre-termination hearing that comports with "minimum procedural safeguards, adapted to the particular characteristics of welfare recipients, and to the limited nature of the controversies to be resolved").

As the Commissioner has explained here and in her motion to dismiss, Plaintiff has not demonstrated that her process-based claims can succeed as a matter of law.

B.     The Redeterminations Do Not Violate the APA

Plaintiff asserts that the APA's formal adjudication requirements apply to the section 1631(e)(7) redetermination process, but such a claim is erroneous (Pl.'s Mem. at 7-9).  The APA's formal hearing requirements are limited to adjudications "required by statute to be determined on the record after opportunity for an agency hearing."  5 U.S.C. § 554(a); *see also Crestview Parke Care Ctr. v. Thompson*, 373 F.3d 743, 748 (6th Cir. 2004) ("Agencies need only employ this set of formal adjudication procedures if there is an adjudication required by statute to be determined on the record after opportunity for an agency hearing." (citations omitted)).  Under section 1631(e)(7) of the Act, the agency must "immediately" redetermine an individual's eligibility for benefits if there is reason to believe that fraud or similar fault was involved in that person's application for benefits.  When it conducts a redetermination, the agency is required to "disregard any evidence if there is reason to believe that fraud or similar fault was involved in providing such evidence."  Section 1631(e)(7) does not require a hearing prior to a redetermination—let alone a hearing "on the record"—and thus the APA's formal

adjudication requirements do not apply.  Nevertheless, as previously explained, the agency is providing Plaintiff with a number of procedural protections including a hearing before an ALJ and the opportunity to provide evidence during that hearing to establish that she was entitled to benefits at the time of the application.  Because section 1631(e)(7) redeterminations are not formal adjudications under the APA, Plaintiff's argument is unavailing.

Plaintiff also argues that adjudicators are effectively being directed by investigators or prosecutors within the agency (Pl.'s Mem. at 9-10).  Again, Plaintiff mischaracterizes the statute.  An OIG referral under section 1129(l) of the Act simply triggers a process—it does not direct an outcome.  Moreover, it is a process that neither the SSA OIG nor the agency has any power to deviate from or control.  It was Congress who directed the SSA OIG to provide information to SSA based on its reason to believe that fraud was involved in individuals' applications, and Congress who directed SSA to conduct redeterminations upon receipt of this information.  *See* 42 U.S.C. §§ 1320a-8(l), 1383(e)(7).  Importantly, Congress vested exclusive authority in the Commissioner to decide to terminate benefits and assess an overpayment.  The SSA OIG has no role in that determination—let alone the authority to direct such a decision.  42 U.S.C. § 1383(e)(7)(C).  Plaintiff's arguments are thus without merit.

### C.  The Redeterminations Do Not Violate the Social Security Act

Plaintiff erroneously asserts that her redetermination violates section 1631(e)(7) of the Act, which requires SSA to "immediately redetermine" an individual's eligibility for benefits, because SSA waited until May 2015 to take any action (*see* Pl.'s Mem. at 10-19).  However, as even Plaintiff admits, the statute specifically contemplates that the agency delay taking adverse action if it would jeopardize the criminal prosecution of a person involved in the suspected fraud (Pl.'s Mem. at 16).  Moreover, OIG may delay referring cases to the agency for the same reason.

13

42 U.S.C. § 1320a-8(l).  Here, as contemplated by the statute, SSA waited to notify individuals that their benefits would be redetermined until it received a referral from the SSA OIG permitting it to take such action.

On May 12, 2015, the agency received a referral from the SSA OIG pursuant to section 1129(1) of the Social Security Act, 42 U.S.C. § 1320a-8(1), informing SSA that it had reason to believe that fraud had been involved in 1,787 individuals' applications for benefits under titles II and XVI (Mosby Decl. ¶ 3, Attachment 2).  In each of these cases, the referral stated that the OIG had reason to believe that Mr. Conn or his firm submitted pre-completed "template" forms purportedly from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., Frederic Huffnagle, M.D., or David P. Herr, D.O., dated between January 2007 and May 2011, in support of each individual's application for benefits (*id.*).  The OIG informed SSA that it could proceed with taking adverse action as a result of its redetermination of the cases under sections 205(u) and 1631(e)(7) of the Act, 42 U.S.C. §§ 405(u), 1383(e)(7) (*id.*).  Soon thereafter, SSA began to notify the affected individuals of the redeterminations and that their cases would be remanded to an ALJ for further proceedings and a new decision (Mosby Decl. ¶ 4, Attachment 3).  The individuals were informed that they had ten days to provide evidence that would allow the agency to make a decision without having to remand the case to an ALJ (*id.*).

Thus, not only is there absolutely no merit to Plaintiff's  assertion that the agency did not act in a timely manner, but even if there was some delay, there is no support in the statute for the proposition that delay somehow limits SSA from exercising its statutory mandate to redetermine eligibility for benefits if there is fraudulent information in the application for those benefits. Plaintiff's allegations that the agency was somehow complicit in the alleged delay do not correct this deficiency in logic—it does not follow (nor make sense) that any delay completely bars SSA

from effectuating its statutory mandate to redetermine eligibility for benefits when there is a reason to believe that there was fraud in the application for those benefits. For the reasons above and as discussed in Defendant's motion to dismiss (Def.'s Mot.), Plaintiff's claims must fail.

## II.    Plaintiff Cannot Demonstrate that She Will Suffer Irreparable Harm

To justify the requested injunctive relief, Plaintiff bears the burden of establishing that she is likely to be harmed irreparably before the case can be decided on the merits. *Winter*, 555 U.S. at 22. The "irreparable injury requirement erects a very high bar for a movant." *Air Transp. Ass'n of Am., Inc. v. Export-Import Bank*, 840 F. Supp. 2d 327, 334 (D.D.C. 2012). It is not sufficient for a plaintiff to demonstrate only a "possibility" of irreparable harm as that would be inconsistent with the Supreme Court's characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief. *See Winter*, 555 U.S. at 22. To demonstrate irreparable harm, the plaintiff must show "'actual and imminent' harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006).

Plaintiff's assertion that she will be irreparably harmed by the imminent termination of her supplemental security income (SSI) as well as concomitant health benefits (Pl.'s Mem. at 19-20) should be rejected as speculative. The Commissioner fully understands the importance of SSI to the people who need it, which is why the Commissioner has provided Plaintiff with ample procedural protections to protect against the possibility of any erroneous deprivation of benefits. As discussed above, Plaintiff has received a hearing before an ALJ and the opportunity to provide evidence during that hearing to establish that she was entitled to benefits at the time of the application. As Plaintiff avers, her benefits continued for the entirety of that process. Now, she has challenged the denial of those benefits in federal court. In light of the process afforded

Plaintiff during SSA's redetermination of her eligibility for benefits, thus reducing the risk of erroneous deprivation, as well as her pending appeal in federal court, Plaintiff's alleged harm is entirely speculative and cannot be considered irreparable.  *See Winter*, 555 U.S. at 22; *see also Carabillo v. ULLICO Inc. Pension Plan & Trust*, 355 F. Supp. 2d 49, 54 (D.D.C. 2004) (loss of health insurance benefits does not constitute per se irreparable harm for the purposes of a preliminary injunction), *aff'd sub nom. Carabillo v. Ullico Inc.*, 198 F. App'x 1 (D.C. Cir. 2006).

Moreover, as discussed above, at any time during the redetermination process, Plaintiff was able to file a new application for disability benefits.  *See* SSR 16-1p, 81 Fed. Reg. 13436 (Mar. 14, 2016).  If SSA finds that Plaintiff is disabled under the Act, Plaintiff will be eligible to receive benefits.  Plaintiff has not averred that she has applied for disability benefits and has been denied.  Instead, she alleges that "SSA has forced Ms. Hicks to file a new claim for benefits and go through the normal, backlogged process for a new claim" (Pl.'s Mem. at 18 n.20). Tellingly, Plaintiff has not specifically alleged that the adjudication of *her* application has been delayed.  Because the threat of injury must be both "real and immediate," not "conjectural" or "hypothetical," Plaintiff has not met the high burden of proving irreparable harm.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)

Therefore, given that the risk of wrongful termination of benefits is low, plus the fact that Plaintiff will get retroactive relief if the termination of benefits is wrong or current relief if she is approved for benefits based a new application, Plaintiff cannot demonstrate irreparable harm.

### III.    Plaintiff Has Not Shown that the Balance of the Equities or Public Interest Favors Her Motion

A party seeking a preliminary injunction must demonstrate both "that the balance of equities tips in [her] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "These factors merge when the Government is the opposing party." *See Nken v. Holder*, 556 U.S. 418, 435 (2009); *FBME Bank Ltd. v. Lew*, 125 F. Supp. 3d 109, 127 (D.D.C. 2015). These factors clearly do not favor Plaintiff.

Although SSA has an obligation to provide benefits to truly disabled individuals, the agency has a corresponding duty to protect the funds available for legitimate beneficiaries by ensuring that benefits are not erroneously paid to individuals who are not statutorily entitled to receive them. As section 1631(e)(7) of the Act makes clear, Congress wanted SSA to expeditiously terminate benefits whenever there is reason to believe that an application for benefits was fraudulent, and accordingly mandated that the agency "immediately redetermine the eligibility of an individual for benefits . . . if there is reason to believe that fraud or similar fault was involved in the application of the individual for such benefits." 42 U.S.C. § 1383(e)(7)(A)(i). The public interest lies in permitting SSA to follow the redetermination process that Congress has required. A court should not lightly interfere with this process— particularly where, as here, Plaintiff's claims are without legal or factual support.

### CONCLUSION

For the foregoing reasons, this Court should deny Plaintiff's motion for a preliminary injunction under Federal Rule of Civil Procedure 65(a).

Respectfully submitted,


KERRY B. HARVEY
UNITED STATES ATTORNEY

By:      /s/ John S. Osborn, III
         JOHN S. OSBORN, III
         Assistant United States Attorney
         260 W. Vine Street, Suite 300
         Lexington, Kentucky 40507-1612
         Phone: (859) 685-4812
         Facsimile: (859) 233-2533
         John.Osborn@usdoj.gov

Of Counsel for the Defendant:

John Jay Lee, Regional Chief Counsel, Denver
Laura Hope Holland, Assistant Regional Counsel
Social Security Administration
Office of the General Counsel, Region VIII
1961 Stout Street, Suite 4169
Denver, Colorado 80294-4003


## CERTIFICATE OF SERVICE

  I certify that on August 31, 2016, I electronically filed the foregoing with the Clerk of Court by

using the CM/ECF system, which will send a notice of electronic filing to the following

CM/ECF participant, Joseph Lane, Esq., Counsel for Plaintiff.

                        /s/ John S. Osborn, III
                        JOHN S. OSBORN, III
                        Assistant United States Attorney